RECEIVED

JUL 18 2013

AT 8:00 3:29 P.M

WILLIAM T. WALSH
CLERK

+[2008R01205/JI]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA     :     Criminal No. 13-473 (PGS)
                             :
                             :     18 U.S.C. §§ 666(a)(1)(A),
        v.                   :     1014, 1341, 1344,
                             :     1957, 981(a)(1)(C), 982,
                             :     and 2 and 28 U.S.C. § 2461(c)
ROBERT KAHAN                 :
                             :     I N D I C T M E N T

### INDICTMENT

The Grand Jury in and for the District of New Jersey,

sitting at Trenton, charges:

### Counts 1 - 2

### (False Statement in a Loan Application)

1.   At all times relevant to Counts 1 and 2 of the

Indictment:

A.   Defendant ROBERT KAHAN was a developer of affordable

housing projects in Trenton, New Jersey and elsewhere.

B.   Defendant ROBERT KAHAN was the owner of Tara

Developers, LLC, a limited liability company, which he used as

the construction contractor for certain of his affordable housing

projects.

C.   The City of Trenton was a municipality located in

Mercer County, New Jersey.  Through its Department of Housing and

Economic Development, the City of Trenton managed its planning

and development activities including sponsoring private

developers for the purpose of increasing the supply and quality of affordable housing in Trenton.  To support affordable housing projects and to assist its designated developers in gaining access to public funding for such projects, the City of Trenton received public funding from the sources referred to below:

(i)   The United States Department of Housing and Urban Development ("HUD") was an agency of the United States.  As part of its mission, HUD administered programs to provide federal funds to municipalities to expand the supply of decent, affordable housing.  Among the HUD funds provided to the City of Trenton for this purpose were funds from HUD's HOME program ("HOME"), which was designed to create affordable housing for low- and very low-income families, and funds from HUD's Homeownership Zone program ("HOZ"), which was designed to transform blighted areas into stable, mixed-income, homeownership communities.

(ii)  The New Jersey Department of Community Affairs (the "DCA") was an agency of the State of New Jersey that, among other responsibilities, provided administrative guidance and financial support to local governments.  Through its Neighborhood Preservation Balanced Housing program, the DCA provided state funds for affordable housing projects to the City of Trenton.

(iii) Certain New Jersey municipalities provided funds for affordable housing to other New Jersey municipalities, such as the City of Trenton, pursuant to Regional Contribution Agreements ("RCAs").

D.    The Thrift Institutions Community Investment Corporation of New Jersey was a subsidiary of the New Jersey League of Community Bankers (the "League").  When the League combined with the New Jersey Bankers Association (the "Association"), effective January 1, 2009, the Thrift Institutions Community Investment Corporation of New Jersey became a subsidiary of the Association and was known as TICIC,

Inc. (The Thrift Institutions Community Investment Corporation of New Jersey and TICIC, Inc. are collectively referred to hereinafter as "TICIC"). TICIC provided financial institutions in New Jersey with a facility to pool resources to provide financing for affordable housing projects in New Jersey.

E.   Among the financial institutions with which TICIC did business were Roma Bank, Third Federal Bank, Delanco Federal Savings Bank, and Metuchen Savings Bank, each of which was a financial institution within the meaning of Title 18, United States Code, Section 20, whose deposits were insured by the Federal Deposit Insurance Corporation during the period from on or about May 22, 2006 to on or about September 15, 2010.

F.   The New Jersey Housing and Mortgage Finance Agency (the "NJHMFA") was an agency of the State of New Jersey which provided funding for affordable housing opportunities for New Jersey residents. The NJHMFA managed a financing program for the development of newly constructed and substantially rehabilitated homeownership housing in New Jersey called the Choices in Home Ownership Incentives Created for Everyone program ("CHOICE"). For each CHOICE project, the NJHMFA generally provided 50% of the approved construction loan required to complete the project with the balance provided by the developer's chosen private construction lender. Typically, where a developer had chosen to obtain private financing through TICIC, the NJHMFA, pursuant to

an agreement with TICIC, delegated to TICIC responsibility for servicing the CHOICE construction loan and the CHOICE subsidy.

Broad Street Commons, LLC and
the Canal Plaza Homeownership Project

2.    At all times relevant to Counts 1 and 2 of the Indictment:

A.    Defendant ROBERT KAHAN was the owner of Broad Street Commons, LLC ("Broad Street, LLC"), a limited liability company which was designated by the City of Trenton as the developer of the Canal Plaza Homeownership Project (the "Canal Plaza Project"), a project to construct 22 affordable housing units in Trenton.  Defendant ROBERT KAHAN used Tara Developers, LLC as the construction contractor for the Canal Plaza Project.

B.    Defendant ROBERT KAHAN, on behalf of Broad Street, LLC, applied for and obtained funding for the Canal Plaza Project, including private funding provided by a consortium of banks assembled by TICIC.

C.    Roma Bank, Third Federal Bank, and Delanco Federal Savings Bank formed the bank consortium that was assembled by TICIC to provide Broad Street, LLC with a construction loan for the Canal Plaza Project.

D.    In addition to private funding, defendant ROBERT KAHAN sought and obtained for the Canal Plaza Project public funding

4

that was administered by the City of Trenton and TICIC, as described below:

(i)   The City of Trenton agreed to provide approximately $800,000 in capital funds and approximately $597,121 in HUD HOME funds to Broad Street, LLC for the Canal Plaza Project.

(ii) The NJHMFA agreed to provide a CHOICE loan in the amount of approximately $1,621,400 and a CHOICE subsidy in the amount of approximately $1,857,373 to Broad Street, LLC for the Canal Plaza Project (the "NJHMFA's CHOICE loan and subsidy for the Canal Plaza Project").   Pursuant to an agreement with TICIC, the NJHMFA delegated to TICIC responsibility for servicing the NJHMFA's CHOICE loan and subsidy for the Canal Plaza Project.

Defendant ROBERT KAHAN's False Statements in
<u>Applications Pertaining to the Canal Plaza Project</u>

3.    Between on or about May 22, 2006 and on or about May 17, 2007, for the purpose of applying for and obtaining a construction loan for the Canal Plaza Project, defendant ROBERT KAHAN caused to be submitted to Roma Bank, Third Federal Bank, Delanco Federal Savings Bank (collectively referred to hereinafter as the "bank consortium for the Canal Plaza Project"), and others a Personal Financial Statement for himself and his spouse as of May 22, 2006 (the "Kahans' May 22, 2006 Personal Financial Statement") that falsely overstated the values of their assets including the values of defendant ROBERT KAHAN's partnership and venture interests and the cash surrender value of life insurance.

4.    On or about May 17, 2007, defendant ROBERT KAHAN, on

behalf of Broad Street, LLC, entered into a Construction Loan Agreement with TICIC for a construction loan in the amount of approximately $1,621,400 for the Canal Plaza Project (the "Canal Plaza Construction Loan Agreement") that was funded by the bank consortium for the Canal Plaza Project.

5.    In accordance with the Canal Plaza Construction Loan Agreement and Broad Street, LLC's detailed budget of the development cost of the Canal Plaza Project (the "Canal Plaza Project Budget"), a pre-established Contractor's Fee of $434,628 was to be paid in progress payments as construction was completed and a Developer's Fee of $440,000 was to be paid only when the Canal Plaza Project was completed and the construction loan had been repaid.

6.    The Canal Plaza Construction Loan Agreement provided, in pertinent part:

> Each Advance shall reimburse the Borrower for construction costs incurred and paid for by the Borrower.  No funds will be advanced except upon application, inspection and title update pursuant to Lender's required procedures.  Prior to inspection by the Lender, at least five (5) business days prior to the requested date of an Advance, the Borrower shall provide a written request for an advance accompanied by Borrower's certification on AIA forms G-702 and G-703, or appropriate substitute form(s), certifying the percentage of work completed of each trade and line item, the stage of construction, the sum to be advanced and compliance with the approved plans. . . .  All Advances shall be based upon the [Canal Plaza Project] Budget.
>
> \*       \*       \*
>
> Lender's obligation to make any Advance after the first Advance shall be subject to the continuing satisfaction . .

6

. of the following conditions, all in form, manner and substance satisfactory to Lender and its counsel;

\*      \*      \*

the Lender shall be furnished with affidavits from the Borrower, except as otherwise indicated, stating that all money previously disbursed on the Loan has been applied to the cost of work, labor and materials for the Project, and that there are presently no amounts due and owing to subcontractors, materialmen or laborers, other than the holdbacks or retainages provided for under existing contractual arrangements between the various parties . . . .

\*      \*      \*

All Advances shall be held in trust by Borrower and shall be applied only towards the costs of the Project. Borrower shall not cause, or allow to be caused, a diversion of any Advance or any part thereof to any use other than the construction of the Project.  Borrower shall not commingle any Advance, or any part thereof, with any other loan proceeds from any other loan.

\*      \*      \*

Borrower agrees that no material changes, modifications of or amendments to the Plans and Specifications shall be made without first obtaining the written approval of the Lender and all Governmental Authorities.  No individual change orders to the Plans and Specifications, with a cost in excess of $10,000 (or any change orders that aggregate more than $25,000) shall be made without Lender's prior written approval.  Lender has no obligation to fund work change orders, except as agreed upon.  No changes or reallocation of funds in the [Canal Plaza Project] Budget shall be made without Lender's prior written approval.

7.  On or about May 17, 2007, defendant ROBERT KAHAN, on behalf of Broad Street, LLC, entered into a Construction Loan Agreement CHOICE Subsidy Rider with the NJHMFA which stated, in pertinent part:

A condition of funding by the [NJHMFA] is that the covenants contained in the [Canal Plaza] Construction Loan Agreement run to the [NJHMFA] as well as to [TICIC].

Pursuant to the Canal Plaza Construction Loan Agreement, advances under the NJHMFA's CHOICE loan and subsidy for the Canal Plaza Project were to be funded on a proportional basis with each advance made by TICIC of the construction loan that was funded by the bank consortium for the Canal Plaza Project.

8.    For the purpose of obtaining advances in connection with the approximately $1,621,400 construction loan funded by the bank consortium for the Canal Plaza Project as well as advances of the public funding for that Project, defendant ROBERT KAHAN caused Payment Applications ("Canal Plaza Payment Applications") to be submitted to TICIC, the City of Trenton, and others that made false representations that all money paid pursuant to Canal Plaza Payment Applications had been used to pay costs for labor, materials, and other obligations for the Canal Plaza Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses such as payments for the renovation of his son's house and other debts, liabilities, and expenses that defendant ROBERT KAHAN had.

9.    Defendant ROBERT KAHAN signed Canal Plaza Payment Applications on behalf of Tara Developers, LLC as the contractor for the Canal Plaza Project.  The amount used in Canal Plaza Payment Applications for Tara Developers, LLC's "Contract Amount"

as the contractor equaled approximately the sum of the amounts in the Canal Plaza Project Budget for the construction costs plus the pre-established Contractor's Fee of $434,628.  Defendant ROBERT KAHAN fraudulently used Canal Plaza Payment Applications to give false assurances to TICIC, the City of Trenton, and others that such Applications were based on the Canal Plaza Project Budget and specific written and executed change orders and that the money paid pursuant to such Applications would be applied only towards the costs of the Canal Plaza Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses.

10.  On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

did knowingly make and cause to be made false statements, as described below, for the purpose of influencing the action of the bank consortium for the Canal Plaza Project upon the construction loan for the Canal Plaza Project, namely:

9

| Count | Date | False Statement |
|-------|------|-----------------|
| 1 | Between on or about May 22, 2006 and on or about May 17, 2007 | By falsely overstating in the Kahans' May 22, 2006 Personal Financial Statement the values of their assets including the values of defendant ROBERT KAHAN's partnership and venture interests and the cash surrender value of life insurance |
| 2 | From on or about February 6, 2008 to on or about September 5, 2008 | By falsely stating in Canal Plaza Payment Applications that all money previously paid pursuant to Canal Plaza Payment Applications had been used to pay costs for labor, materials, and other obligations for the Canal Plaza Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses |

In violation of Title 18, United States Code, Section 1014 and Section 2.

<u>Count 3</u>

<u>(Bank Fraud)</u>

1.    Paragraphs 1 to 9 of Counts 1 and 2 of the Indictment
are hereby realleged and incorporated by reference as though
fully set forth herein.

2.    From on or about May 22, 2006 to on or about September
5, 2008, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

did knowingly and intentionally execute and attempt to execute a
scheme and artifice to defraud financial institutions and to
obtain money and funds owned by, and under the custody and
control of, financial institutions, namely, the bank consortium
for the Canal Plaza Project, by means of materially false and
fraudulent pretenses, representations, and promises, namely: (a)
by causing to be submitted to the bank consortium for the Canal
Plaza Project and others, the Kahans' May 22, 2006 Personal
Financial Statement that falsely overstated the values of their
assets including the values of defendant ROBERT KAHAN's
partnership and venture interests and the cash surrender value of
life insurance; (b) by falsely stating in Canal Plaza Payment
Applications that all money previously paid pursuant to Canal
Plaza Payment Applications had been used to pay costs for labor,
materials, and other obligations for the Canal Plaza Project

11

when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses; and (c) by giving false assurances in Canal Plaza Payment Applications that such Applications were based on the Canal Plaza Project Budget and specific written and executed change orders and that the money paid pursuant to such Applications would be applied only towards the costs of the Canal Plaza Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses.

   In violation of Title 18, United States Code, Section 1344 and Section 2.

## Count 4

### (Mail Fraud)

1.   Paragraphs 1 to 9 of Counts 1 and 2 of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

The Scheme to Defraud

2.   From on or about May 22, 2006 to on or about September 5, 2008, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

did knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, as set forth in Paragraphs 1 to 9 of Counts 1 and 2 of the Indictment and as set forth below.

The Object of the Scheme to Defraud

3.   The object of the scheme and artifice to defraud was for defendant ROBERT KAHAN to induce TICIC, the bank consortium for the Canal Plaza Project, the NJHMFA, and the City of Trenton, through materially false pretenses, representations, and promises, to provide money to Broad Street, LLC for the Canal Plaza Project, substantial portions of which defendant ROBERT KAHAN wrongfully caused to be diverted for his own personal use, his other development projects, and other unauthorized uses.

13

The Manner and Means of the Scheme to Defraud

4.    Among the manner and means used by defendant ROBERT
KAHAN to carry out his scheme to defraud are those set forth in
Paragraphs 1 to 9 of Counts 1 and 2 of the Indictment.

5.    From on or about February 9, 2008 to on or about July
18, 2008, in the District of New Jersey and elsewhere, for the
purpose of executing and attempting to execute the scheme and
artifice described above, defendant

ROBERT KAHAN

did knowingly cause to be deposited the matters and things set
forth below to be sent and delivered by a private and commercial
interstate carrier and caused to be delivered by such carrier
according to the directions thereon such matters and things,
namely, material sent by TICIC to the NJHMFA that included the
Requests for Disbursements of the NJHMFA's CHOICE loan and
subsidy for the Canal Plaza Project.

In violation of Title 18, United States Code, Section 1341
and Section 2.

14

<u>Count 5</u>

<u>(False Statement in a Loan Application)</u>

1.    Paragraph 1 of Counts 1 and 2 of the Indictment is hereby realleged and incorporated by reference as though fully set forth herein.

2.    Between on or about May 1, 2007 and on or about July 18, 2007, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

did knowingly make and cause to be made false statements, as described below, for the purpose of influencing the action of Roma Bank upon a loan in the amount of approximately $300,000 to defendant ROBERT KAHAN, namely, by causing to be submitted to Roma Bank defendant ROBERT KAHAN and his spouse's May 1, 2007 Personal Financial Statement that falsely overstated the values of their assets including the values of defendant ROBERT KAHAN's partnership and venture interests, the value of accounts receivable related to Kent Street Senior Citizens Housing LP, and the cash surrender value of life insurance.

In violation of Title 18, United States Code, Section 1014 and Section 2.

15

## Count 6

### (False Statement in a Loan Application)

1.    Paragraph 1 of Counts 1 and 2 of the Indictment is hereby realleged and incorporated by reference as though fully set forth herein.

2.    Defendant ROBERT KAHAN's company Tara Developers, LLC had an ownership interest in Community Investment Builders, LLC ("CIB").

3.    Between on or about May 1, 2007 and on or about October 10, 2007, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

did knowingly make and cause to be made false statements, as described below, for the purpose of influencing the action of Roma Bank upon a letter of credit in the amount of approximately $710,000 for CIB, namely, by causing to be submitted to Roma Bank defendant ROBERT KAHAN and his spouse's May 1, 2007 Personal Financial Statement that falsely overstated the values of their assets including the values of defendant ROBERT KAHAN's partnership and venture interests, the value of accounts receivable related to Kent Street Senior Citizens Housing LP, and the cash surrender value of life insurance.

In violation of Title 18, United States Code, Section 1014 and Section 2.

16

## Counts 7 - 8

### (False Statement in a Loan Application)

1.     Paragraph 1 of Counts 1 and 2 of the Indictment is hereby realleged and incorporated by reference as though fully set forth herein.

Passaic Street Housing, LLC and
the Southwest Village II Project

2.     At all times relevant to Counts 7 and 8 of the Indictment:

A.     Defendant ROBERT KAHAN was the owner of Passaic Street Housing, LLC ("Passaic Street, LLC"), a limited liability company which was designated by the City of Trenton as the developer of the Southwest Village II Project (the "Southwest Village II Project"), a project to construct 52 affordable housing units in Trenton.  Defendant ROBERT KAHAN used Tara Developers, LLC as the construction contractor for the Southwest Village II Project.

B.     Defendant ROBERT KAHAN, on behalf of Passaic Street, LLC, applied for and obtained funding for the Southwest Village II Project including private funding provided through TICIC by Roma Bank.

C.     Defendant ROBERT KAHAN also sought and obtained through Roma Bank a commitment from the Federal Home Loan Bank of New York (the "FHLBNY") for an Affordable Housing Program ("AHP")

17

subsidy in the amount of approximately $459,000 that was to be provided to Passaic Street, LLC for the Southwest Village II Project.

    D.   In addition to private funding, defendant ROBERT KAHAN sought and obtained for the Southwest Village II Project public funding that was administered by the City of Trenton, namely, approximately:

    (i)   $374,221.25 in HUD HOME funds,
    (ii)  $325,778.75 in HUD HOZ funds,
    (iii) $1,500,000 in RCA funds, and
    (iv)  $5,835,347 in DCA funds.

Defendant ROBERT KAHAN's False Statements in
Applications Pertaining to the Southwest Village II Project

    3.   Between on or about May 22, 2006 and on or about January 29, 2008, for the purpose of applying for and obtaining a construction loan for the Southwest Village II Project, defendant ROBERT KAHAN caused to be submitted to Roma Bank and others a Personal Financial Statement for himself and his spouse as of May 22, 2006 (the "Kahans' May 22, 2006 Personal Financial Statement") that falsely overstated the values of their assets including the values of defendant ROBERT KAHAN's partnership and venture interests and the cash surrender value of life insurance.

    4.   On or about January 29, 2008, defendant ROBERT KAHAN, on behalf of Passaic Street, LLC, entered into a Construction Loan Agreement with TICIC for a construction loan in the amount

of approximately $6,435,000 for the Southwest Village II Project
(the "Southwest Village II Construction Loan Agreement") that was
funded by Roma Bank.

5.    In accordance with the Southwest Village II
Construction Loan Agreement and Passaic Street, LLC's detailed
budget of the development cost of the Southwest Village II
Project (the "Southwest Village II Project Budget"), a pre-
established Contractor's Fee of $829,368 was to be paid in
progress payments as construction was completed and a Developer's
Fee of $1,020,000 was to be paid only when the Southwest Village
II Project was completed and the construction loan had been
repaid.

6.    The Southwest Village II Construction Loan Agreement
provided, in pertinent part:

> Each Advance shall reimburse the Borrower for construction
> costs incurred and paid for by the Borrower.  No funds will
> be advanced except upon application, inspection and title
> update pursuant to Lender's required procedures.  Prior to
> inspection by the Lender, at least five (5) business days
> prior to the requested date of an Advance, the Borrower
> shall provide a written request for an advance accompanied
> by Borrower's certification on AIA forms G-702 and G-703, or
> appropriate substitute form(s), certifying the percentage of
> work completed of each trade and line item, the stage of
> construction, the sum to be advanced and compliance with the
> approved plans. . . .  All Advances shall be based upon the
> [Southwest Village II Project] Budget.
>
>                      *       *       *
>
>      Lender's obligation to make any Advance after the first
> Advance shall be subject to the continuing satisfaction . .
> . of the following conditions, all in form, manner and
> substance satisfactory to Lender and its counsel;

*          *          *

the Lender shall be furnished with affidavits from the Borrower, except as otherwise indicated, stating that all money previously disbursed on the Loan has been applied to the cost of work, labor and materials for the Project, and that there are presently no amounts due and owing to subcontractors, materialmen or laborers, other than the holdbacks or retainages provided for under existing contractual arrangements between the various parties . . . .

*          *          *

All Advances shall be held in trust by Borrower and shall be applied only towards the costs of the Project. Borrower shall not cause, or allow to be caused, a diversion of any Advance or any part thereof to any use other than the construction of the Project.  Borrower shall not commingle any Advance, or any part thereof, with any other loan proceeds from any other loan.

*          *          *

Borrower agrees that no material changes, modifications of or amendments to the Plans and Specifications shall be made without first obtaining the written approval of the Lender and all Governmental Authorities.  No individual change orders to the Plans and Specifications, with a cost in excess of $10,000 (or any change orders that aggregate more than $25,000) shall be made without Lender's prior written approval.  Lender has no obligation to fund work change orders, except as agreed upon.  No changes or reallocation of funds in the [Southwest Village II Project] Budget shall be made without Lender's prior written approval.

7.    For the purpose of obtaining advances in connection with the approximately $6,435,000 construction loan funded by Roma Bank for the Southwest Village II Project and the approximately $459,000 AHP subsidy as well as advances of the public funding for that Project, defendant ROBERT KAHAN caused Payment Applications ("Southwest Village II Payment Applications") to be submitted to TICIC, the City of Trenton, the

FHLBNY, and others that made false representations that all money paid pursuant to Southwest Village II Payment Applications had been used to pay costs for labor, materials, and other obligations for the Southwest Village II Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses such as payments for the renovation of his son's house, his daughter's wedding, and other debts, liabilities, and expenses that defendant ROBERT KAHAN had.

8.   Defendant ROBERT KAHAN signed Southwest Village II Payment Applications on behalf of Tara Developers, LLC as the contractor for the Southwest Village II Project.   The amount used in Southwest Village II Payment Applications for Tara Developers, LLC's "Contract Amount" as the contractor equaled approximately the sum of the amounts in the Southwest Village II Project Budget for the construction costs plus the pre-established Contractor's Fee of $829,368.   Defendant ROBERT KAHAN fraudulently used Southwest Village II Payment Applications to give false assurances to TICIC, the City of Trenton, and others that such Applications were based on the Southwest Village II Project Budget and specific written and executed change orders and that the money paid pursuant to such Applications would be applied only towards the costs of the Southwest Village II Project when,

in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses.

Defendant ROBERT KAHAN's $134,324.32
Tax Payment to the United States Treasury

9.   In a letter dated September 5, 2007, the Internal Revenue Service (the "IRS") advised defendant ROBERT KAHAN and his spouse that the amount of their outstanding federal tax liability relating to their United States Individual Income Tax Returns for tax years 2000 through 2003 was approximately $154,435.34.

10.   On or about October 10, 2007, defendant ROBERT KAHAN signed and caused IRS Form 433-A, a Collection Information Statement for Wage Earners and Self-Employed Individuals, to be submitted to the IRS, in which he did not list as his and his spouse's assets any investments, life insurance with any cash surrender value, business assets, or accounts/notes receivable.

11.   On or about March 28, 2008, pursuant to a fraudulent Southwest Village II Payment Application, defendant ROBERT KAHAN caused TICIC to transfer approximately $846,793 for the Southwest Village II Project (the "$846,793 Southwest Village II Payment") to a bank account in the name of Passaic Street, LLC (the "Passaic Street bank account").

12.   On or about April 18, 2008, defendant ROBERT KAHAN

caused approximately $150,000 in funds derived from the $846,793 Southwest Village II Payment to be transferred from the Passaic Street bank account to a bank account in the name of Tara Developers, LLC (the "Tara Developers bank account").

13.   On or about April 21, 2008, defendant ROBERT KAHAN used funds derived from the $846,793 Southwest Village II Payment to fund, in part, a check in the amount of approximately $135,000 made payable to himself that he caused to be drawn on the Tara Developers bank account and deposited in a bank account in his name and that of his spouse ("defendant ROBERT KAHAN's personal bank account #1").

14.   On or about April 21, 2008, defendant ROBERT KAHAN used funds derived from the $846,793 Southwest Village II Payment to fund, in part, a check in the amount of approximately $134,324.32 made payable to the United States Treasury that he caused to be drawn on defendant ROBERT KAHAN's personal bank account #1 to satisfy his and his spouse's overdue federal tax liability.

Defendant ROBERT KAHAN's $343,354.41
Payment to Purchase the Kahans' Florida Condominium

15.   On or about September 19, 2008, pursuant to a false and fraudulent Southwest Village II Payment Application, defendant ROBERT KAHAN caused TICIC to transfer approximately $829,285 for the Southwest Village II Project (the "$829,285 Southwest Village II Payment") to the Passaic Street bank account.

16. On or about October 21, 2008, defendant ROBERT KAHAN used funds derived from the $829,285 Southwest Village II Payment as well as from approximately $250,560.20 fraudulently obtained from the City of Trenton on or about September 23, 2008 to fund, in part, a check in the amount of approximately $200,000 made payable to himself that he caused to be drawn on the Passaic Street bank account and deposited in a bank account in his name ("defendant ROBERT KAHAN's personal bank account #2").

17. On or about October 23, 2008, defendant ROBERT KAHAN used funds derived from the $829,285 Southwest Village II Payment as well as from approximately $250,560.20 fraudulently obtained from the City of Trenton on or about September 23, 2008 to fund, in part, a transfer in the amount of approximately $343,354.41 that he caused to be made from defendant ROBERT KAHAN's personal bank account #2 for the benefit of a title company (the "title company") to purchase a condominium in Florida for himself and his spouse (the "Kahans' Florida condominium").

Defendant ROBERT KAHAN's Payments
to Renovate the Kahans' Florida Condominium

18. On or about October 20, 2008, pursuant to a false and fraudulent Southwest Village II Payment Application, defendant ROBERT KAHAN caused the City of Trenton to issue a check in the amount of approximately $1,315,046 and a check in the amount of approximately $527,518.50, together totaling approximately

24

$1,842,564.50, for the Southwest Village II Project (the "$1,842,564.50 Southwest Village II Payment"), that defendant Robert Kahan caused to be deposited in the Passaic Street bank account.

19.  On or about October 29, 2008, defendant ROBERT KAHAN used funds derived from the $1,842,564.50 Southwest Village II Payment to fund, in part, a check in the amount of approximately $100,000 made payable to himself that he caused to be drawn on the Passaic Street bank account and deposited in defendant ROBERT KAHAN's personal bank account #2.

20.  On or about November 21, 2008, pursuant to a false and fraudulent Southwest Village II Payment Application, defendant ROBERT KAHAN caused TICIC to transfer approximately $802,305 for the Southwest Village II Project (the "$802,305 Southwest Village II Payment") to the Passaic Street bank account.

21.  On or about December 10, 2008, defendant ROBERT KAHAN used funds derived from the $802,305 Southwest Village II Payment to fund, in part, a check in the amount of approximately $100,000 made payable to himself that he caused to be drawn on the Passaic Street bank account and deposited in defendant ROBERT KAHAN's personal bank account #2.

22.  On or about the dates set forth below, defendant ROBERT KAHAN used funds derived from the following sources to fund, in

25

part, the following checks that he caused to be drawn on defendant ROBERT KAHAN's personal bank account #2 and made payable to an interior design firm (the "interior design firm") to pay for the renovation of the Kahans' Florida condominium:

| Date | Check | Source |
|------|-------|--------|
| December 8, 2008 | Check #217 in the amount of approximately $61,437.60 | The $1,842,564.50 Southwest Village II Payment |
| December 8, 2008 | Check #218 in the amount of approximately $24,997.13 | The $1,842,564.50 Southwest Village II Payment |
| December 8, 2008 | Check #219 in the amount of approximately $22,736.12 | The $1,842,564.50 Southwest Village II Payment and the $802,305 Southwest Village II Payment |

23. On or about December 8, 2008, pursuant to a false and fraudulent Southwest Village II Payment Application, defendant ROBERT KAHAN caused the City of Trenton to issue a check in the amount of approximately $802,304.72 for the Southwest Village II Project (the "$802,304.72 Southwest Village II Payment") that defendant ROBERT KAHAN caused to be deposited in the Passaic Street bank account.

24. On or about December 17, 2008, defendant ROBERT KAHAN used funds derived from the $802,304.72 Southwest Village II Payment to fund, in part, a check in the amount of approximately $50,000 made payable to himself that he caused to be drawn on the

26

Passaic Street bank account and deposited in defendant ROBERT KAHAN's personal bank account #2.

25.   Between on or about the dates set forth below, defendant ROBERT KAHAN used funds derived from the following sources to fund, in part, the following checks that he caused to be drawn on defendant ROBERT KAHAN's personal bank account #2 and made payable to the interior design firm to pay for the renovation of the Kahans' Florida condominium:

| Date | Check | Source |
|------|-------|--------|
| December 20, 2008 | Check #223 in the amount of approximately $56,301.68 | The $802,305 Southwest Village II Payment |
| December 23, 2008 | Check #224 in the amount of approximately $30,997.15 | The $802,305 Southwest Village II Payment and the $802,304.72 Southwest Village II Payment |
| December 23, 2008 | Check #225 in the amount of approximately $20,519.36 | The $802,304.72 Southwest Village II Payment |

26.   On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

did knowingly make and cause to be made false statements, as described below, for the purpose of influencing the action of Roma Bank upon the construction loan for the Southwest Village II

27

Project, namely:

| Count | Date | False Statement |
|---|---|---|
| 7 | Between on or about May 22, 2006 and on or about January 29, 2008 | By falsely overstating in the Kahans' May 22, 2006 Personal Financial Statement the values of their assets including the values of defendant ROBERT KAHAN's partnership and venture interests and the cash surrender value of life insurance |
| 8 | From on or about April 14, 2008 to on or about November 6, 2009 | By falsely stating in Southwest Village II Payment Applications that all money previously paid pursuant to Southwest Village II Payment Applications had been used to pay costs for labor, materials, and other obligations for the Southwest Village II Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses |

In violation of Title 18, United States Code, Section 1014 and Section 2.

## Count 9

## (Bank Fraud)

1.    Paragraph 1 of Counts 1 and 2 and Paragraphs 2 to 25 of
Counts 7 and 8 of the Indictment are hereby realleged and
incorporated by reference as though fully set forth herein.

2.    From on or about May 22, 2006 to in or about November
2009, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

did knowingly and intentionally execute and attempt to execute a

scheme and artifice to defraud Roma Bank and to obtain money and

funds owned by, and under the custody and control of, Roma Bank

by means of materially false and fraudulent pretenses,

representations, and promises, namely: (a) by causing to be

submitted to Roma Bank and others, the Kahans' May 22, 2006

Personal Financial Statement that falsely overstated the values

of their assets including the values of defendant ROBERT KAHAN's

partnership and venture interests and the cash surrender value of

life insurance; (b) by falsely stating in Southwest Village II

Payment Applications that all money previously paid pursuant to

Southwest Village II Payment Applications had been used to pay

costs for labor, materials, and other obligations for the

Southwest Village II Project when, in fact, defendant ROBERT

KAHAN wrongfully caused substantial portions of such money to be

29

diverted for his own personal use, his other development projects, and other unauthorized uses; and (c) by giving false assurances in Southwest Village II Payment Applications that such Applications were based on the Southwest Village II Project Budget and specific written and executed change orders and that the money paid pursuant to such Applications would be applied only towards the costs of the Southwest Village II Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses.

In violation of Title 18, United States Code, Section 1344 and Section 2.

## Count 10

### (Mail Fraud)

1.    Paragraph 1 of Counts 1 and 2 and Paragraphs 2 to 25 of Counts 7 and 8 of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

The Scheme to Defraud

2.    From on or about May 22, 2006 to in or about November 2009, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

did knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, as set forth in Paragraphs 2 to 25 of Counts 7 and 8 of the Indictment and as set forth below.

The Object of the Scheme to Defraud

3.    The object of the scheme and artifice to defraud was for defendant ROBERT KAHAN to induce TICIC, Roma Bank, the FHLBNY, and the City of Trenton, through materially false pretenses, representations, and promises, to provide money to Passaic Street, LLC for the Southwest Village II Project, substantial portions of which defendant ROBERT KAHAN wrongfully caused to be diverted for his own personal use, his other development projects, and other unauthorized uses.

31

<u>The Manner and Means of the Scheme to Defraud</u>

4.    Among the manner and means used by defendant ROBERT KAHAN to carry out his scheme to defraud are those set forth in Paragraphs 2 to 25 of Counts 7 and 8 of the Indictment.

5.    On or about August 18, 2008, in the District of New Jersey and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice described above, defendant

ROBERT KAHAN

did knowingly cause to be placed in a post office and authorized depository for mail the matter and thing set forth below to be sent and delivered by the United States Postal Service and caused to be delivered by mail according to the directions thereon such matter and thing, namely, material sent by a housing consultant hired by defendant ROBERT KAHAN to the FHLBNY that included a request that the FHLBNY pay AHP funds in the amount of approximately $153,000 to Passaic Street, LLC for the Southwest Village II Project.

In violation of Title 18, United States Code, Section 1341 and Section 2.

<u>Count 11</u>

<u>(Fraud Against a Local Government Receiving Federal Benefits)</u>

1.    Paragraph 1 of Counts 1 and 2 and Paragraphs 2 to 25 of Counts 7 and 8 of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.    In the one year period beginning on or about July 20, 2008, the City of Trenton received federal benefits in excess of $10,000.

3.    From on or about July 20, 2008 to on or about July 19, 2009, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN,

being an agent of the City of Trenton for the Southwest Village II Project, obtained by fraud, and otherwise without authority knowingly converted to his use, and intentionally misapplied, funds provided by the City of Trenton for the Southwest Village II Project with a value of $5,000 and more, that was owned by, and was under the care, custody, and control of the City of Trenton.

In violation of Title 18, United States Code, Section 666(a)(1)(A) and Section 2.

33

## Counts 12 - 18

## (Transacting in Criminal Proceeds)

1.    Paragraph 1 of Counts 1 and 2 and Paragraphs 2 to 25 of Counts 7 and 8 of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

knowingly engaged and attempted to engage in monetary transactions affecting interstate commerce in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity described below, as follows:

34

| Count | Date | Monetary Transaction | Specified Unlawful Activities |
|---|---|---|---|
| 12 | October 23, 2008 | Transfer in the amount of approximately $343,354.41 from defendant ROBERT KAHAN's personal bank account #2 to the title company to purchase the Kahans' Florida condominium | False statement in a loan application in violation of 18 U.S.C. § 1014; fraud against a local government receiving federal benefits in violation of 18 U.S.C. § 666(a)(1)(A) |
| 13 | December 8, 2008 | Check #217 in the amount of approximately $61,437.60 drawn on defendant ROBERT KAHAN's personal bank account #2 and made payable to the interior design firm to pay for the renovation of the Kahans' Florida condominium | Fraud against a local government receiving federal benefits in violation of 18 U.S.C. § 666(a)(1)(A) |
| 14 | December 8, 2008 | Check #218 in the amount of approximately $24,997.13 drawn on defendant ROBERT KAHAN's personal bank account #2 and made payable to the interior design firm to pay for the renovation of the Kahans' Florida condominium | Fraud against a local government receiving federal benefits in violation of 18 U.S.C. § 666(a)(1)(A) |

| 15 | December 8, 2008 | Check #219 in the amount of approximately $22,736.12 drawn on defendant ROBERT KAHAN's personal bank account #2 and made payable to the interior design firm to pay for the renovation of the Kahans' Florida condominium | False statement in a loan application in violation of 18 U.S.C. § 1014; fraud against a local government receiving federal benefits in violation of 18 U.S.C. § 666(a)(1)(A) |
| --- | --- | --- | --- |
| 16 | December 20, 2008 | Check #223 in the amount of approximately $56,301.68 drawn on defendant ROBERT KAHAN's personal bank account #2 and made payable to the interior design firm to pay for the renovation of the Kahans' Florida condominium | False statement in a loan application in violation of 18 U.S.C. § 1014 |
| 17 | December 23, 2008 | Check #224 in the amount of approximately $30,997.15 drawn on defendant ROBERT KAHAN's personal bank account #2 and made payable to the interior design firm to pay for the renovation of the Kahans' Florida condominium | False statement in a loan application in violation of 18 U.S.C. § 1014; fraud against a local government receiving federal benefits in violation of 18 U.S.C. § 666(a)(1)(A) |

| 18 | December 23, 2008 | Check #225 in the amount of approximately $20,519.36 drawn on defendant ROBERT KAHAN's personal bank account #2 and made payable to the interior design firm to pay for the renovation of the Kahans' Florida condominium | Fraud against a local government receiving federal benefits in violation of 18 U.S.C. § 666(a)(1)(A) |

In violation of Title 18, United States Code, Section 1957 and Section 2.

## Counts 19 - 20

### (False Statement in a Loan Application)

1.    Paragraph 1 of Counts 1 and 2 of the Indictment is hereby realleged and incorporated by reference as though fully set forth herein.

Monmouth Management at Trenton, LLC
and the Catherine S. Graham Project

2.    At all times relevant to Counts 19 and 20 of the Indictment:

A.    Defendant ROBERT KAHAN's company Tara Developers, LLC had an ownership interest in Monmouth Management at Trenton, LLC ("MMT"), a limited liability company which was designated by the City of Trenton as the developer of the Catherine S. Graham Project (the "CSG Project"), a project to construct 42 affordable housing units in Trenton.  Defendant ROBERT KAHAN used Tara Developers, LLC as the construction contractor for the CSG Project.

B.    Defendant ROBERT KAHAN, on behalf of MMT, applied for and obtained funding for the CSG Project including private funding provided by a consortium of banks assembled by TICIC.

C.    Roma Bank, Third Federal Bank, and Metuchen Savings Bank formed the bank consortium that was assembled by TICIC to provide MMT a construction loan for the CSG Project.

38

D.    In addition to private funding, defendant ROBERT KAHAN sought and obtained for the CSG Project public funding that was administered by the City of Trenton and TICIC, as described below:

> (i)   The City of Trenton agreed to provide approximately $468,252 in HUD HOME funds to MMT for the CSG Project.
>
> (ii)  The NJHMFA agreed to provide a CHOICE loan in the amount of approximately $2,873,623 and a CHOICE subsidy in the amount of approximately $2,595,158 to MMT for the CSG Project (the "NJHMFA's CHOICE loan and subsidy for the CSG Project"). Pursuant to an agreement with TICIC, the NJHMFA delegated to TICIC responsibility for servicing the CHOICE loan and the CHOICE subsidy for the CSG Project.

**Defendant ROBERT KAHAN's False Statements**
**in Applications Pertaining to the CSG Project**

3.    Between on or about January 25, 2008 and on or about November 25, 2008, for the purpose of applying for and obtaining a construction loan for the CSG Project, defendant ROBERT KAHAN caused to be submitted to Roma Bank, Third Federal Bank, and Metuchen Savings Bank (hereinafter collectively referred to as the "bank consortium for the CSG Project"), and others a Personal Financial Statement for himself and his spouse as of January 25, 2008 (the "Kahans' January 25, 2008 Personal Financial Statement") that falsely overstated the values of their assets including the values of defendant ROBERT KAHAN's partnership and venture interests, the value of accounts receivable related to Kent Street Senior Citizens Housing LP, and the cash surrender value of life insurance.

39

4.   On or about November 25, 2008, defendant ROBERT KAHAN, on behalf of MMT, entered into a Construction Loan Agreement with TICIC for a construction loan in the amount of approximately $2,873,623 for the CSG Project (the "CSG Construction Loan Agreement") that was funded by the bank consortium for the CSG Project.

5.   In accordance with the CSG Construction Loan Agreement and MMT's detailed budget of the development cost of the CSG Project (the "CSG Project Budget"), a pre-established Contractor's Fee of $459,685 was to be paid in progress payments as construction was completed and a Developer's Fee of $776,661 was to be paid only when the CSG Project was completed and the construction loan had been repaid.

6.   The CSG Construction Loan Agreement provided, in pertinent part:

> The Lender and the Borrower acknowledge and agree that the Lender will disburse the proceeds of the Loan only for the payment of or reimbursement for the actual costs, fees and expenses incurred by the Borrower in connection with (a) the acquisition of the Land (b) the construction and development of the Improvements as herein set forth, and (b) [sic] Loan closing costs and fees, as shown on the [CSG] Project Budget, with all such disbursements to be made in accordance with the terms and subject to the conditions set forth in this Agreement.
>
> *          *          *
>
> The Borrower covenants and agrees that until the Loan is paid in full, the Borrower shall not: . . .
>
> Cause any change in the Plans, any line item in the

[CSG] Project Budget, the terms and conditions of the
Construction Contract or the Architect's Agreement, the
terms and conditions of any subcontract or material order or
any other contract delivered to and approved by the Lender
and relating to the design, operation, use, construction or
management of the Improvements, or in the identity of the
Contractor or the Architect without the Lender's prior
written consent.

                    *          *          *

     At least ten (10) business days prior to the date on
which the Borrower desires a disbursement, the Borrower
shall submit to the Lender . . . a requisition using AIA
Form G702/G703 or such other form as the Lender may request
signed by the Contractor, subcontractors and the Architect
and notarized, accompanied by original lien waivers or
releases, as applicable, for the prior period . . . and
original change orders, and copies of invoices for indirect
construction costs, the accuracy of which may at the
Lender's option be certified by the Inspecting Architect,
and such other information and documentation required
hereunder. . . .

     Each Application as submitted, shall automatically
constitute: . . .

     (2) a . . . representation and certification by the
Borrower that (A) payment for the work and materials
described in such Application has been made or will be made
with the proceeds of the disbursements or advances for which
the Application was submitted . . . . .

     7.   On or about November 25, 2008, defendant ROBERT KAHAN,

on behalf of MMT, entered into a Construction Loan Agreement

CHOICE Subsidy Rider with the NJHMFA which stated, in pertinent

part:

     A condition of funding by the [NJHMFA] is that the covenants
     contained in the [CSG] Construction Loan Agreement run to
     the [NJHMFA] as well as to [TICIC].

Pursuant to the CSG Construction Loan Agreement, advances under

the NJHMFA's CHOICE loan and subsidy for the CSG Project were to

                              41

be funded on a proportional basis with each advance made by TICIC
of the construction loan that was funded by the bank consortium
for the CSG Project.

8.    For the purpose of obtaining advances in connection
with the approximately $2,873,623 construction loan funded by the
bank consortium for the CSG Project as well as advances of the
public funding for that Project, defendant ROBERT KAHAN caused
Payment Applications ("CSG Payment Applications") to be submitted
to TICIC, the City of Trenton, and others that made false
representations that all money paid pursuant to CSG Payment
Applications had been used to pay costs for labor, materials, and
other obligations for the CSG Project when, in fact, defendant
ROBERT KAHAN wrongfully caused substantial portions of such money
to be diverted for his own personal use, his other development
projects, and other unauthorized uses such as payments for the
renovation of his son's house and other debts, liabilities, and
expenses that defendant ROBERT KAHAN had.

9.    Defendant ROBERT KAHAN signed CSG Payment Applications
on behalf of Tara Developers, LLC as the contractor for the CSG
Project.  The amount used in CSG Payment Applications for Tara
Developers, LLC's "Contract Amount" as the contractor equaled
approximately the sum of the amounts in the CSG Project Budget
for the construction costs plus the pre-established Contractor's
Fee of $459,685.  Defendant ROBERT KAHAN fraudulently used CSG

42

Payment Applications to give false assurances to TICIC, the City of Trenton, and others that such Applications were based on the CSG Project Budget and specific written and executed change orders and that the money paid pursuant to such Applications would be applied only towards the costs of the CSG Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses.

10. On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

did knowingly make and cause to be made false statements, as described below, for the purpose of influencing the action of the bank consortium for the CSG Project upon the construction loan for the CSG Project, namely:

| Count | Date | False Statement |
|-------|------|-----------------|
| 19 | Between on or about January 25, 2008 and on or about November 25, 2008 | By falsely overstating in the Kahans' January 25, 2008 Personal Financial Statement the values of their assets including the values of defendant ROBERT KAHAN's partnership and venture interests, the value of accounts receivable related to Kent Street Senior Citizens Housing LP, and the cash surrender value of life insurance |

43

| | | |
|---|---|---|
| 20 | From on or about March 5, 2009 to on or about November 6, 2009 | By falsely stating in CSG Payment Applications that all money previously paid pursuant to CSG Payment Applications had been used to pay costs for labor, materials, and other obligations for the CSG Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses |

In violation of Title 18, United States Code, Section 1014 and Section 2.

## Count 21

### (Bank Fraud)

1.     Paragraph 1 of Counts 1 and 2 and Paragraphs 2 to 9 of Counts 19 and 20 of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.     From on or about January 25, 2008 to in or about November 2009, in the District of New Jersey and elsewhere, defendant

### ROBERT KAHAN

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud the bank consortium for the CSG Project and to obtain money and funds owned by, and under the custody and control of, the bank consortium for the CSG Project by means of materially false and fraudulent pretenses, representations, and promises, namely: (a) by causing to be submitted to the bank consortium for the CSG Project the Kahans' January 25, 2008 Personal Financial Statement that falsely overstated the values of their assets including the values of defendant ROBERT KAHAN's partnership and venture interests, the value of accounts receivable related to Kent Street Senior Citizens Housing LP, and the cash surrender value of life insurance; (b) by falsely stating in CSG Payment Applications that all money previously paid pursuant to CSG Payment

45

Applications had been used to pay costs for labor, materials, and other obligations for the CSG Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses; and (c) by giving false assurances in CSG Payment Applications that such Applications were based on the CSG Project Budget and specific written and executed change orders and that the money paid pursuant to such Applications would be applied only towards the costs of the CSG Project when, in fact, defendant ROBERT KAHAN wrongfully caused substantial portions of such money to be diverted for his own personal use, his other development projects, and other unauthorized uses.

In violation of Title 18, United States Code, Section 1344 and Section 2.

## Count 22

### (Mail Fraud)

1.     Paragraph 1 of Counts 1 and 2 and Paragraphs 2 to 9 of
Counts 19 and 20 of the Indictment are hereby realleged and
incorporated by reference as though fully set forth herein.

The Scheme to Defraud

2.     From on or about January 25, 2008 to in or about
November 2009, in the District of New Jersey and elsewhere,
defendant

ROBERT KAHAN

did knowingly devise and intend to devise a scheme and artifice
to defraud and for obtaining money and property by means of
materially false and fraudulent pretenses, representations, and
promises, as set forth in Paragraphs 2 to 9 of Counts 19 and 20
of the Indictment and as set forth below.

The Object of the Scheme to Defraud

3.     The object of the scheme and artifice to defraud was
for defendant ROBERT KAHAN to induce TICIC, the bank consortium
for the CSG Project, the NJHMFA, and the City of Trenton,
through materially false pretenses, representations, and
promises, to provide money to MMT for the CSG Project,
substantial portions of which defendant ROBERT KAHAN wrongfully

47

caused to be diverted for his own personal use, his other development projects, and other unauthorized uses.

The Manner and Means of the Scheme to Defraud

4.    Among the manner and means used by defendant ROBERT KAHAN to carry out his scheme to defraud are those set forth in Paragraphs 2 to 9 of Counts 19 and 20 of the Indictment.

5.    From on or about March 16, 2009 to on or about August 17, 2009, in the District of New Jersey and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice described above, defendant

ROBERT KAHAN

did knowingly cause to be deposited the matters and things set forth below to be sent and delivered by a private and commercial interstate carrier and caused to be delivered by such carrier according to the directions thereon such matters and things, namely, material sent by TICIC to the NJHMFA that included the Requests for Disbursements of the NJHMFA's CHOICE loan and subsidy for the CSG Project.

In violation of Title 18, United States Code, Section 1341 and Section 2.

48

## Count 23

### (Fraud Against a Local Government Receiving Federal Benefits)

1.    Paragraph 1 of Counts 1 and 2 and Paragraphs 2 to 9 of Counts 19 and 20 of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.    In the one year period beginning on or about April 1, 2009, the City of Trenton received federal benefits in excess of $10,000.

3.    From on or about April 1, 2009 to on or about March 31, 2010, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN,

being an agent of the City of Trenton for the CSG Project, obtained by fraud, and otherwise without authority knowingly converted to his use, and intentionally misapplied, funds provided by the City of Trenton for the CSG Project with a value of $5,000 and more, that was owned by, and was under the care, custody, and control of the City of Trenton.

In violation of Title 18, United States Code, Section 666(a)(1)(A) and Section 2.

## Count 24

### (False Statement in a Loan Application)

1.    Paragraph 1 of Counts 1 and 2 and Paragraphs 2 to 9 of Counts 19 and 20 of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.    Pursuant to the CSG Construction Loan Agreement, as a personal guarantor of the construction loan for the CSG Project, defendant ROBERT KAHAN was to provide TICIC on an annual basis with updated personal financial information.

3.    Between on or about January 20, 2009 and on or about May 20, 2009, in the District of New Jersey and elsewhere, defendant

ROBERT KAHAN

did knowingly make and cause to be made false statements, as described below, for the purpose of influencing the action of Roma Bank and Third Federal Bank upon the construction loan for the CSG Project, namely: by causing to be submitted to Roma Bank and Third Federal Bank defendant ROBERT KAHAN and his spouse's January 20, 2009 Personal Financial Statement that falsely overstated the values of their assets including the values of defendant ROBERT KAHAN's partnership and venture interests, the value of accounts receivable related to Kent Street Senior Citizens Housing LP, and the cash surrender value of life

50

insurance.

In violation of Title 18, United States Code, Section 1014 and Section 2.

## Count 25

### (False Statement in a Loan Application)

1.    Paragraph 1 of Counts 1 and 2, Paragraphs 2 to 9 of
Counts 19 and 20, and Paragraph 2 of Count 24 of the Indictment
are hereby realleged and incorporated by reference as though
fully set forth herein.

2.    Between on or about April 21, 2010 and on or about
September 15, 2010, in the District of New Jersey and elsewhere,
defendant

ROBERT KAHAN

did knowingly make and cause to be made false statements, as
described below, for the purpose of influencing the action of
Roma Bank, Third Federal Bank, and Metuchen Savings Bank upon the
construction loan for the CSG Project, namely: by causing to be
submitted to Roma Bank, Third Federal Bank, and Metuchen Savings
Bank defendant ROBERT KAHAN and his spouse's April 21, 2010
Personal Financial Statement that falsely overstated the values
of their assets including the value of accounts receivable
related to Kent Street Senior Citizens Housing LP and the cash
surrender value of life insurance.

In violation of Title 18, United States Code, Section 1014
and Section 2.

52

## FIRST FORFEITURE ALLEGATION

1.   The allegations contained in all Paragraphs of Counts 1 to 11 and all Paragraphs of Counts 19 to 25 of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein for the purpose of noticing forfeitures pursuant to Title 28, United States Code, Section 2461(c).

2.   The United States hereby gives notice to defendant ROBERT KAHAN that, upon conviction of the offenses charged in Counts 1 to 11 and Counts 19 to 25 of the Indictment, the United States will seek forfeiture, in accordance with Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C), of any property, real and personal, that constitutes and is derived from proceeds traceable to the violations of Title 18, United States Code, Sections 666(a)(1)(A), 1014, 1341 and 1344, alleged in Counts 1 to 11 and Counts 19 to 25 of the Indictment.

3.   If by any act or omission of defendant ROBERT KAHAN, any of the property subject to forfeiture described in Paragraph 2 herein:

A.   cannot be located upon the exercise of due diligence;

B.   has been transferred or sold to, or deposited with, a third party,

53

C.  has been placed beyond the jurisdiction of the court;

D.  has been substantially diminished in value; or

E.  has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to forfeiture of substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

## SECOND FORFEITURE ALLEGATION

1.   The allegations contained in all Paragraphs of Counts 12 to 18 of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Section 982.

2.   The United States hereby gives notice to defendant ROBERT KAHAN that, upon conviction of the offenses charged in Counts 12 to 18 of the Indictment, the United States will seek forfeiture, in accordance with Title 18, United States Code, Section 982(a)(1), of any property, real and personal, involved in those offenses, and any property traceable to such property.

3.   If by any act or omission of defendant ROBERT KAHAN, any of the property subject to forfeiture described in Paragraph 2 herein:

   A.   cannot be located upon the exercise of due diligence;

   B.   has been transferred or sold to, or deposited with, a third party,

   C.   has been placed beyond the jurisdiction of the court;

   D.   has been substantially diminished in value; or

   E.   has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to forfeiture of

substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

*Paul J. Fishman/rah*

PAUL J. FISHMAN
United States Attorney

CASE NUMBER: 13-

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

ROBERT KAHAN

# INDICTMENT FOR

18 U.S.C. §§ 666(a)(1)(A), 1014,
1341, 1344, 1957, 981(a)(1)(C),
982, and 2 and 28 U.S.C.
§ 2461(c)

A True Bill,

Foreperson

**PAUL J. FISHMAN**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

J FORTIER IMBERT
*ASSISTANT U.S. ATTORNEY*
*973-645-2890*

USA-48AD 8
(Ed. 1/97)